**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 3:19-00232** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **[2] TIFFANY RENETIA WALLACE** | ) | |

## PETITION TO ENTER A PLEA OF GUILTY

I, Tiffany Renetia Wallace, respectfully represent to the Court as follows:

(1) My true full name is Tiffany Renetia Wallace and I declare that all proceedings against me be had in that name. I was born on January 7th, 1990, completed 12 years of formal education.

(2) My retained lawyer(s) are Mark E. Atchison and F. Lee Spratt.

(3) I have received a copy of the indictment before being called upon to plead and have read and discussed it with my lawyer(s) and, believe and feel that I understand every accusation made against me in the indictment.

(4) I have told my lawyer the facts and surrounding circumstances concerning the matters mentioned in the indictment and believe and feel that my lawyer(s) know enough about my case to render me effective assistance. My lawyer(s) have counseled and advised with me as to the nature and cause of every accusation against me. We have thoroughly discussed the government's case against me and my potential defenses to the government's case. My lawyer(s) have explained to me each element of the crime charged and how the government would offer to prove these elements beyond a reasonable doubt.

(5) I understand that the statutory penalty for the offenses with which I am charged is as set out below:

**Count One of the Indictment: Conspiracy to distribute and possess with intent to distribute controlled substances, including a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. Statutory term of up to twenty years imprisonment, a fine of up to $1,000,000, at least three years supervised release, and a mandatory special assessment of $100. All in violation of Title 21, United States Code, Section 846.**

**Count Two of the Indictment: Using communication facilities, i.e., cellular telephones, to facilitate the commission of a drug trafficking felony. Statutory term of up to four years**

1

imprisonment, a fine of up to $250,000, up to one-year supervised release, and a mandatory special assessment of $100. All in violation of Title 21, United States Code, Section 843(b).

Count Four of the Indictment: Possession of a controlled substance, that is a mixture and substance containing methamphetamine, within 1,000 feet of real property owned by a public housing authority, with intent to distribute. Statutory term of at least one-year imprisonment, up to 40 years imprisonment, a fine of up to $2,000,000, at least six years supervised release, and a mandatory special assessment of $100. All in violation of Title 21, United States Code, Sections 841(a)(1) and 860, and Title 18, United States Code, Section 2.

Count Five of the Indictment: Possession of a firearm in furtherance of a federal drug trafficking felony. Statutory term of a mandatory consecutive sentence of at least five years and up to life imprisonment, up to five years supervised release, a fine of up to $250,000, and a mandatory special assessment of $100. All in violation of Title 18, United States Code, Section 924(c)(1)(A).

Count Six of the Indictment: Possession of a firearm by a previously convicted felon. Statutory term of up to ten years' imprisonment, up to three years supervised release, a fine of up to $250,000, and a mandatory special assessment of $100. All in violation of Title 18, United States Code, Sections 922(g)(1) and 924.

Count Eight: Possession of a controlled substance, that is a mixture and substance containing methamphetamine, with intent to distribute. Statutory term up to twenty years imprisonment, up to three years of supervised release, a fine of up to $1,000,000, and a mandatory special assessment of $100; All in violation of Title 21, United States Code, Section 841(a)(1).

Forfeiture Allegation: As it relates to the forfeiture of a firearm and ammunition in connection with Count Six of the Indictment

(6) I have been advised that I will be sentenced to a sentence sufficient but not greater than necessary to satisfy the goals of sentencing specified in 18 U.S.C. § 3553(a). One consideration will be the Federal Sentencing Guidelines ("the Guidelines") established by the United States Sentencing Commission. I understand that the Guidelines are advisory, but that the Court must take account of the Guidelines together with other sentencing goals. My lawyer and I have discussed the calculation of the Guidelines in my case. I realize that this is simply my lawyer's estimate. I understand that my advisory Guideline range will be calculated by the United States Probation Officer who prepares the presentence report in my case. This estimation is subject to challenge by either me or the government, unless prohibited by the plea agreement. The final Guideline calculation will be made by the Court. I further understand that I may be sentenced to a fine to be calculated through the Guidelines. No fine will be imposed if the Judge finds me unable to pay any fine. Considered in this fine may be the amount of financial loss to the victim or gain to me as well as the costs of any confinement or probation supervision. The Court may also order

that restitution be made to any victim of the offense. If I am convicted of any offense specified in 18 U.S.C. § 3663A, or as otherwise required by law, restitution is mandatory. I have a right to a review of my sentence by the United States Court of Appeals for the Sixth Circuit unless waived in the plea agreement.

(7)   I understand that I am not eligible for a sentence of probation if I receive any sentence of imprisonment or am convicted of a Class A or Class B felony punishable by twenty or more year's imprisonment. I have been informed that under the present federal sentencing system there is no parole. I will receive only 54 days good time credit per year, and it will not vest until the end of each year. I further understand that if I am sentenced to a period of supervised release and I violate the terms of that supervised release, upon revocation I could be imprisoned again.

(8)   I understand that should this plea of guilty be accepted, I will be a convicted felon in the eyes of the law for the rest of my life. This means, under present law that (a) I cannot vote in Tennessee, unless my right to vote is lawfully restored, and may not be eligible to vote in other states; (b) I cannot possess a firearm anywhere; (c) If I am presently on probation, parole, or supervised release whether state or federal, the fact that I have been convicted may be used to revoke my probation, parole or supervised release regardless of what sentence I receive on this case; (d) If I am convicted of any crime in the future, whether state or federal, this conviction may be used to increase that sentence; (e) I may have to disclose the fact that I am a convicted felon when applying for employment and such disclosure may result in my not getting some jobs and having difficulty in getting others. If I have been convicted of certain drug offenses, my conviction may result in my losing entitlement to certain federal benefits pursuant to the Anti-Drug Abuse Act of 1988. I understand that this list may not include all of the adverse consequences of my conviction in this case.

(9)   I understand that I can plead "NOT GUILTY" to any or all offenses charged against me, and continue to plead "NOT GUILTY", and that if I choose to plead not guilty, the Constitution guarantees me (a) the right to a speedy and public trial by jury; (b) the right not to testify and no implication of guilt would arise by my failure to do so; (c) the right to be presumed innocent until such time, if ever, that the government proves my guilt beyond a reasonable doubt to the satisfaction of a court and jury; (d) the right to see and hear all the witnesses and to cross-examine any witness who may testify against me; (e) the right to use the power and process of the court to compel the production of any evidence, including the attendance of any witnesses, in my favor; and to testify in my own behalf if I choose to do so; (f) the right to have the assistance of counsel in my defense at all stages of the proceedings; (g) if I am convicted at such trial I have the right to appeal with a lawyer to assist me and the appeal will not cost me any money if I am indigent. I understand that if the Court accepts my plea that there will be no jury trial and that I will be convicted of the count(s) to which I plead just as if a jury found me guilty of the charge(s) following a trial. The Court may then impose sentence upon me within the limits set forth in any plea agreement stated in paragraph (13), subject to the maximum punishments set forth in paragraph (5).

3

(10) No officer or agent of any branch of government (federal, state or local), nor any other person, has guaranteed me what sentence I will receive. If there are any agreements between me and my lawyers and the prosecution concerning my plea they are fully set forth in paragraph (13) below. I understand that even with a plea agreement no person can bind the Judge to give any particular sentence in my case. If the Judge rejects an agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) or (C), I will be offered the opportunity to withdraw my guilty plea. If the Judge rejects a recommendation made pursuant to Rule 11(c)(1)(B), I have no right to withdraw my plea. I understand that if the Judge decides to make a recommendation about where I should serve any incarceration that the recommendation is not a promise or a guarantee, but only a recommendation and is not binding on the Bureau of Prisons which will make the final decision (after I am sentenced) about where I will be incarcerated.

(11) My lawyer(s) have done all the investigation and research in this case that I have asked them to do, and they have reviewed with me the discovery material provided by the Government. I am satisfied with their representation at this point.

(12) Fully understanding my rights to plead "NOT GUILTY" and fully understanding the consequence of my plea of guilty, I wish to plead "GUILTY" and respectfully request the Court to accept my plea as follows: GUILTY TO:

**Count One of the Indictment, conspiracy to distribute and possess with intent to distribute controlled substances, including a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.**

**Count Two of the Indictment, using communication facilities, i.e., cellular telephones, to facilitate the commission of a drug trafficking felony.**

**Count Four of the Indictment, possession of a controlled substance, that is a mixture and substance containing methamphetamine, within 1,000 feet of real property owned by a public housing authority, with intent to distribute.**

**Count Five of the Indictment, possession of a firearm in furtherance of a federal drug trafficking felony.**

**Count Six of the Indictment, possession of a firearm by a previously convicted felon.**

**Count Eight: Possession of a controlled substance, that is a mixture and substance containing methamphetamine, with intent to distribute.**

4

**Forfeiture of Property: Defendant also understands that, as a result of the offense charged in Count Six, she is subject to forfeiture of property as alleged in the Forfeiture Allegation of the indictment.**

(13) This plea is the result of a plea agreement between my lawyer and the Government under the provisions of Rule 11 of the *Federal Rules of Criminal Procedure.* The plea agreement is attached to this petition and incorporated herein by reference.

(14) I offer my plea of "GUILTY" freely and voluntarily and of my own accord; also, my lawyer(s) have explained to me, and I feel and believe I understand this petition.

(15) I am not under the influence of either illegal drugs or alcohol.

(16) I request the Court to enter now my plea of "GUILTY" as set forth in paragraph (12) of this petition, in reliance upon my statements made in this petition.

(17) Recognizing that the Court may reserve acceptance of this plea pending the receipt of the pre-sentence report, I agree that the pre-sentence report may be disclosed to the United States Attorney, my counsel and myself, prior to the sentencing hearing.

Signed by me in open court under the penalties of perjury in the presence of my lawyer, this the __12th__ day of March 2020.

_Tiffany Wallace_
**TIFFANY RENETIA WALLACE, Defendant**

## ACKNOWLEDGMENT OF GOVERNMENT ATTORNEY

The maximum punishment, plea and plea agreement (if any) are accurately stated above.

_____
**Attorney for Government**
Samantha A. M. McOsney
AUSA 3/12/20.

## CERTIFICATE OF COUNSEL FOR DEFENDANT

The undersigned, as attorney(s) and counselor(s) for Tiffany Renetia Wallace, hereby certifies as follows:

(1)   We have read and fully explained to Tiffany Renetia Wallace all the accusations against her in this case;

(2)   To the best of our knowledge and belief each statement set forth in the foregoing petition is in all respects accurate and true;

(3)   In our opinion the plea of "GUILTY" as offered by Tiffany Renetia Wallace in paragraph (12) of the foregoing petition, is voluntarily and understandingly made; and we recommend to the Court that the plea of "GUILTY' be accepted and entered as requested in paragraph (12) of the foregoing petition.

This petition to plead guilty is signed in open court in the presence of Tiffany Renetia Wallace this the _____ day of March 2020.

_____
**MARK E. ATCHISON**

_____
**F. LEE SPRATT**
*Attorney(s) for Defendant Tiffany Renetia Wallace*

6

**<u>ORDER</u>**

Good cause appearing therefore from the foregoing petition of the foregoing named defendant and the certificate of her counsel and for all proceedings heretofore had in this case, it is ORDERED that the petition be granted and the defendant's plea of "GUILTY" be accepted and entered as prayed in the petition and as recommended in the certificate of counsel.

DONE in open court this 12ᵗʰ day of _____March_____, 2020.

_____

**UNITED STATES DISTRICT JUDGE**

7

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:19-00232 |
| v. | ) | |
| | ) | Judge Campbell |
| [2] TIFFANY WALLACE | ) | |

## PLEA AGREEMENT

The United States of America, through Donald Q. Cochran, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorney Sunny A.M. Koshy, and defendant, Tiffany Wallace, through defendant's counsel, Mark Atchison and Lee Spratt, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charges in This Case

1.  Defendant acknowledges that she has been charged in the indictment in this case with:

    a.  Count One: Conspiracy to distribute and possess with intent to distribute controlled substances, including a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846;

    b.  Count Two: Using communication facilities, i.e., cellular telephones, to facilitate the commission of a drug trafficking felony, in violation of Title 21, United States Code, Section 843(b);

    c.  Count Four: Possession of a controlled substance, that is, a mixture and substance containing methamphetamine, within 1,000 feet of real property owned by a public

housing authority, with intent to distribute, in violation of Title 21, United States Code, Sections 841(a)(1) and 860, and Title 18, United States Code, Section 2;

    d.   Count Five: Possession of a firearm in furtherance of a federal drug trafficking felony, in violation of Title 18, United States Code, Section 924(c)(1)(A);

    e.   Count Six: Possession of a firearm by a previously convicted felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924;

    f.   Count Eight: Possession of a controlled substance, that is, a mixture and substance containing methamphetamine, with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1); and

    g.   Forfeiture Allegation, relating to the forfeiture of a firearm and ammunition.

2.    Defendant has read the charges against her contained in the indictment. Those charges have been fully explained to her by her attorneys. Defendant fully understands the nature and elements of the crimes with which she has been charged, as well as the forfeiture allegation.

## Charges to Which Defendant is Pleading Guilty

3.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to each of the counts charged against her in the indictment, as described above. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment relating to the firearm and ammunition involved in her offense.

## Penalties

4.    The parties understand and agree that the offenses to which defendant will enter a plea of guilty carry the following maximum penalties:

    a.   Count One: up to 20 years' imprisonment, a fine of up to $1,000,000, at least three years of supervised release, and a mandatory special assessment of $100;

2

b.  Count Two: up to four years' imprisonment, a fine of up to $250,000, up to one year of supervised release, and a mandatory special assessment of $100;

c.  Count Four: at least one year imprisonment, up to 40 years' imprisonment, a fine of up to $2,000,000, at least six years of supervised release, and a mandatory special assessment of $100;

d.  Count Five: a mandatory consecutive sentence of at least five years and up to life imprisonment, up to five years of supervised release, a fine of up to $250,000, and a mandatory special assessment of $100;

e.  Count Six: up to ten years' imprisonment, up to three years supervised release, a fine of up to $250,000, and a mandatory special assessment of $100; and

f.  Count Eight: up to twenty years imprisonment, up to three years of supervised release, a fine of up to $1,000,000, and a mandatory special assessment of $100;

g.  Defendant also understands that, as a result of the offense charged in Count Six, she is subject to forfeiture of property as alleged in the Forfeiture Allegation of the indictment.

### Acknowledgements and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

5.  This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 3:19-00232.

6.  Defendant understands that by pleading guilty she surrenders certain trial rights, including the following:

3

a.     If defendant persisted in a plea of not guilty to the charges against her, she would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

b.     If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charges beyond a reasonable doubt; and that it must consider each count of the indictment against defendant separately.

c.     If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

d.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court.

4

e. At a trial, defendant would have a privilege against self-incrimination so that she could testify or decline to testify, and no inference of guilt could be drawn from her refusal to testify.

7. Defendant understands that by pleading guilty she is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorneys have explained those rights to her, and the consequences of her waiver of those rights.

**Factual Basis**

8. Defendant will plead guilty because she is in fact guilty of each of the charges contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt, and also establishes the basis for the forfeiture allegation: See Attachment A: Agreed Statement of Facts. This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's pleas of guilty and criminal forfeiture, and to assess relevant conduct for purposes of the United States Sentencing Guidelines. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

**Sentencing Guidelines Calculations**

9. The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective on the date of sentencing.

5

10.     For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant recommend to the Court, pursuant to Rule 11(c)(1)(B), the following:

a.      **Offense Level Calculations.**

i.      The parties have no agreement as to the offense level, but agree to recommend that the offense level for the drug offenses be based on the total weight of the pills purchased and seized in this investigation. The drug lab reports relating to those substances will be provided to the U.S. Probation Office for this purpose. The United States agrees not to seek additional drug quantity enhancements against the defendant based on the additional drug transactions which may be determined from a complete evaluation of the contents of her cellular telephone since such an evaluation would be time-consuming. The parties further agree that the resulting base offense level will be increased by up to two levels pursuant to U.S.S.G. § 2D1.2(a) since a portion of the offenses was committed within 1,000 feet of real property owned by a public housing authority.

ii.     The parties agree that the guideline imprisonment sentence for Count Five, pursuant to U.S.S.G. § 2K2.4(b), is the statutory minimum of five years imprisonment, consecutive to all other sentences.

iii.    Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through her allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because

6

defendant will have given timely notice of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

    iv.    The parties agree that the defendant does not qualify for safety valve sentencing due to her possession of a firearm during her offenses of conviction.

    b.    **Criminal History Category.**  The parties have no agreement on the defendant's Criminal History Category.

    c.    **Recommended Offense Level.**  Defendant understands there is no agreement as to a recommended offense level, and that the Court will make its own decision as to the final offense level applicable to the defendant.

    d.    Defendant is aware that the any estimate of the offense level or guidelines range that defendant may have received from defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range. Accordingly, the validity of this agreement is not contingent upon the Probation Officer's or the Court's concurrence with any calculation contained herein or with any calculation the defendant may have received from any other source. In the event that the Probation Office or the Court contemplates any U.S.S.G. adjustments, departures, or calculations different from those recommended above, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

7

Defendant further acknowledges that if the Court does not accept the guidelines calculations of the parties, defendant will have no right to withdraw her guilty plea.

## Cooperation

11. Defendant agrees to cooperate fully and truthfully with the United States and to provide all information known to her regarding any criminal activity. In that regard:

  a. Defendant agrees to respond truthfully and completely to any and all questions that may be put to her, whether in interviews, before a grand jury, or at any trial(s) or other court proceedings.

  b. Defendant agrees to be reasonably available for debriefings and pre-trial conferences as the United States may require.

  c. Defendant agrees to produce voluntarily any and all documents, records, writings, or materials of any kind in her possession or under her care, custody, or control relating directly or indirectly to all areas of inquiry and investigation.

  d. Defendant consents to continuances of her sentencing hearing as requested by the United States.

12. Nothing in this Plea Agreement requires the government to accept any cooperation or assistance that defendant may choose to proffer. The decision as to whether and how to use any information and/or cooperation that defendant provides (if at all) is in the exclusive discretion of the United States.

13. Defendant must at all times give complete, truthful, and accurate information and testimony, and must not commit, or attempt to commit, any further crimes. Defendant understands that if she falsely implicates an innocent person in the commission of a crime, or exaggerates the involvement of any person in the commission of a crime in order to appear cooperative, or if

defendant falsely minimizes the involvement of any person in the commission of a crime in order to protect that person, then defendant will be in violation of the Plea Agreement. Should the United States determine that defendant has failed to cooperate fully, has intentionally given false, misleading, or incomplete information or testimony, has committed or attempted to commit any further crimes, or has otherwise violated any provision of this Plea Agreement, the United States, may in its discretion and as appropriate in light of particular circumstances: (1) prosecute defendant for perjury, false declarations or statements, and obstruction of justice; (2) prosecute any other crime alleged in the indictment that would have otherwise been dismissed at sentencing; (3) charge defendant with other crimes; and (4) recommend a sentence up to the statutory maximum.

14.     This Plea Agreement is not conditioned upon charges being brought against any other individual. This Plea Agreement is not conditioned upon any outcome in any pending investigation. This Plea Agreement is not conditioned upon any result in any future prosecution that may occur because of defendant's cooperation. This Plea Agreement is conditioned upon defendant providing full, complete, and truthful cooperation.

15.     If the United States in its sole discretion determines that defendant has cooperated fully, provided substantial assistance to law enforcement authorities, and otherwise complied with the terms of this Plea Agreement, prior to sentencing the government shall file a motion pursuant to U.S.S.G. § 5K1.1, but not 18 U.S.C. § 3553(e), with the Court setting forth the nature and extent of defendant's cooperation. Defendant understands that at the time this Plea Agreement is entered, no one has promised that a substantial assistance motion will be made on defendant's behalf.

16.     The United States cannot, and does not, make any promise or representation as to what sentence defendant will receive. The United States will inform the Probation Office and the Court of (a) this Plea Agreement; (b) the nature and extent of defendant's activities with respect to

9

this case and all other activities of defendant that the United States deems relevant to sentencing; and (c) the nature and extent of defendant's cooperation.

<u>**Agreements Relating to Sentencing**</u>

17.     If the government determines, in its sole discretion, that defendant has provided substantial assistance to the government in the investigation and prosecution of another person who has committed an offense, then the government shall move the Court to depart downward from the court-determined guidelines range pursuant to U.S.S.G. § 5K1.1, but not below the applicable statutory mandatory minimum sentences described above.  In that case, the government, in its sole discretion, also may recommend that the Court impose a particular sentence or depart downward to a particular extent, and may also recommend that the sentences on all counts of conviction, except for Count Five, run concurrently with the state sentence the defendant is currently serving.  Defendant understands that the decision whether, and to what extent, to depart below the court-determined guidelines range rests solely with the Court, as does the decision on whether to run the sentences concurrently as referenced above.  However, the defendant also understands that she must serve a sentence of at least five years' imprisonment, consecutive to any other sentences, for her conviction on Count Five of the indictment.

18.     Each party is free to recommend whatever sentence it feels appropriate.

19.     Defendant understands that if the government does not move the Court to depart downward from the court-determined guidelines range pursuant to U.S.S.G. § 5K1.1, the Court shall impose a sentence taking into consideration the court-determined guidelines range and the statutory minimum sentence together with other sentencing factors.  Defendant may not withdraw her pleas of guilty because the government has determined not to make a motion pursuant to U.S.S.G. § 5K1.1.

10

20.     It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and, after consideration of the U.S.S.G., may impose the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty pleas. Similarly, defendant understands that any recommendation by the Court related to location of imprisonment is not binding on the Bureau of Prisons.

21.     Defendant agrees to pay the special assessment of $100 per count, for a total of $600, as required by law.

### Forfeiture of Property

22.     Defendant acknowledges that she has subjected personal property to forfeiture, namely the SCCY, CPX-2, 9mm semi-automatic pistol, and its associated ammunition, seized from her on December 12, 2018 (hereinafter collectively referred to as "Subject Property"). By entry of a guilty plea to Count Six, Defendant acknowledges that the Subject Property is subject to forfeiture pursuant to Title 18, United States Code, Section 924(d)(1) by Title 28, United States Code, Section 2461(c), and Defendant agrees that the Subject Property had a substantial connection to the crime of being a previously convicted felon in possession of the referenced firearm.

23.     Prior to sentencing, Defendant relinquishes all claim, title, and interest to the Subject Property and agrees to the entry of a Preliminary Order of Forfeiture forfeiting the Subject Property to the United States and further agrees to the seizure of this property so that this property may be disposed of according to law.

24.     Defendant is unaware of any third party who has an ownership interest in, or claim to, the Subject Property and will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third party in the event a third party files a claim.

11

25. Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

### Presentence Investigation Report/Post-Sentence Supervision

26. Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

27. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including her recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of her sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

28. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea

12

Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

## Entry of Guilty Pleas

29.     The parties jointly request that the Court accept the defendant's pleas of guilty as set forth in this agreement and enter an order reflecting the acceptance of the pleas while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

## Waiver of Appellate Rights

30.     Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether she is guilty of the crimes to which she is agreeing to plead guilty; and (ii) trial rights that might have been available if she exercised her right to go to trial.  Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed.  Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below the guideline range as calculated by the Court, as well as the Court's calculation of that range.  Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241.  However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel.  Likewise, the government waives the right to appeal any sentence imposed by the Court, so long as that sentence includes a mandatory consecutive term of at least five years' imprisonment as to Count Five.

13

**Other Terms**

31.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office. Defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

32.    Should defendant engage in additional criminal activity after she has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

**Conclusion**

33.    Defendant understands that the indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

34.    Defendant understands that her compliance with each part of this Plea Agreement extends until such time as she is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event she violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

14

35. Defendant and her attorney acknowledge that no threats have been made to cause defendant to plead guilty.

36. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

37. <u>Defendant's Signature:</u> I hereby agree that I have consulted with my attorneys and fully understand all rights with respect to the pending indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorneys. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 3|12|20

TIFFANY WALLACE
Defendant

15

38.    Defense Counsel Signature: I am counsel for defendant in this case.  I have fully explained to defendant her rights with respect to the pending indictment.  Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case.  I have reviewed carefully every part of this Plea Agreement with defendant.  To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date:  3/12/2020

MARK ATCHISON/LEE SPRATT

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney

By: _____ 3/9/20
Sunny A.M. Koshy
Assistant U.S. Attorney

By: _____
Ben Schrader
Acting Deputy Chief

16

<u>Attachment A: Agreed Statement of Facts for Guilty Plea</u>
<u>(United States v. Tiffany Wallace)</u>

<u>Summary</u>: In November, 2018, a confidential informant (CI) working with the Metropolitan Nashville Police Department (MNPD) told her handler that she could buy Ecstasy pills from Trinity Willis and provided Willis' telephone number as 615-319-7239. The resulting investigation included three controlled purchases from Willis, which the CI negotiated on Willis' cell phone. Those controlled purchases are summarized below. During these purchases, MNPD identified defendant Tiffany Wallace as Willis' supplier. Ladarrin Burns, who is Willis' boyfriend, was inside their shared residence during the second and third buys, and the take-down operation occurred as Burns was meeting with Wallace to obtain hundreds of tablets to sell to the CI. During that arrest, Burns had photo-copied buy money in his hands. Over 1,000 tablets were seized from Wallace's car. Wallace, who is a convicted felon, was also armed with a loaded pistol during this transaction. A search of Wallace's residence led to the recovery of over 1,000 more tablets. The tablets from the controlled purchases, the takedown operation, and from Wallace's residence were submitted to the MNPD drug lab, which determined that these tablets contained methamphetamine, a Schedule II controlled substance. Review of the defendants' telephone communications, which were obtained pursuant to a federal warrant, confirms the three defendants' participation in the drug conspiracy, as well as Willis' contacts with the CI to arrange these transactions.

The three controlled purchases were audio-recorded, and officers searched the CI and her vehicle before and after each purchase. MNPD also conducted surveillance during the purchases as noted below.

<u>Buy #1 - 25 tablets for $150 on November 14, 2018</u>. The CI contacted Willis on her cell phone, and was instructed to meet Willis at Willis' apartment (2715 Whites Creek Pike, Nashville, TN.) The CI drove to that apartment complex, and officers saw Willis come from the breezeway of Building D, talk briefly with the CI, go back to the breezeway, and then return to the CI. Willis got into the CI's car and sold 25 blue and pink tablets to the CI who paid Willis $150. During this deal, Willis told the CI that she lived in Apartment H-97. Willis left to meet MNPD officers, and gave them those tablets.

<u>Buy #2 - 155 tablets for $750 on November 26, 2018</u>. The CI arranged to buy more tablets from Willis and travelled to the same apartment complex. While in route, Willis called the CI and told her to come to her apartment (H-97). The CI went to that apartment, and met Willis and another woman. That other woman told the CI they needed to meet the supplier to get the tablets. That woman, Willis, and the CI left the apartment, got into a Nissan Rogue registered to another person, and drove to the D building. There, the CI gave the other woman the buy money. The other woman got into a waiting Chevy Malibu, got back into the Rogue, and gave the CI two plastic bags of tablets. That woman, Willis, and the CI returned to the H building, where Willis and the other woman went back into H-97 while the CI left in her car with the tablets. She met detectives and gave them the baggies which contained about 155 multicolored tablets. During this deal, Willis told the CI she had another customer who wanted 100 tablets. Additionally, Burns was inside H-97 when the CI went into that apartment. However, Burns did not interact with the CI regarding this deal.

Detectives followed the Chevy Malibu to 423 Revels Drive, and saw a black woman with blond hair get out of the Malibu and go into that house. They identified her as the defendant, Tiffany Wallace. They also obtained a state order permitting them to install a tracker on that Malibu.

Buy #3 - 350 tablets for $1630 on December 5, 2018. The CI again arranged to buy more tablets from Willis, and Willis instructed the CI to come to H-97. The CI went there, met with Willis, and again saw Burns in the apartment. The CI provided Willis $1630 in exchange for about 350 tablets, and then left the apartment to meet detectives. After she left, detectives saw Willis come out of that apartment to discard some trash, and so were able to again identify Willis.

Takedown/Arrests - December 12, 2018. The CI arranged to buy 1,000 tablets for $5,000 from Willis on December 12, 2018. Willis again told the CI to meet her at H-97. The CI went to the apartment, and met Willis and Burns. Willis told the CI she only had a portion of the tablets, and was waiting for her supplier to bring the remainder. The CI went back out to her car to wait. Willis came out a short time later, and gave the CI about 415 tablets. Willis told the CI that the supplier would arrive soon, and returned to H-97.

Based on GPS data and surveillance, Wallace left 423 Revels and drove to the area near D Building, 2715 Whites Creek Pike, where she parked. That location is within real property owned by a public housing authority, that is the Metropolitan Nashville Housing and Development Authority. A short time later, Burns left H-97, drove to Wallace's car, and got into Wallace's car. Officers then moved in and arrested Wallace and Burns. At that time, Burns had a portion of the previously photocopied buy money from this deal in his hand. A Verizon flip phone was also recovered from Burns.

Officers seized a loaded SCCY, CPX-2, 9mm semi-automatic pistol from Wallace's person during this takedown. That firearm was easily accessible to her, and she possessed that firearm in furtherance of her possession of a large quantity of a controlled substance which she intended to distribute. A qualified ATF interstate nexus expert verified this pistol was not manufactured in Tennessee. Wallace has prior felony convictions in Hardeman County, Tennsee, for a marijuana felony and for possessing contraband in a penal facility, both of which are crimes punishable by a term of imprisonment exceeding one year. As a result, Wallace was prohibited from possessing firearms and ammunition affecting interstate commerce, and Wallace knew that she had previously been convicted of such felony offenses.

Burns was Mirandized and elected not to talk to officers. Wallace was Mirandized, claimed that she had seen a car chase a while ago in the Rivergate area, saw a baggie being thrown out of one of the vehicles, recovered that baggie, and found that it contained Ecstasy pills and other materials. Wallace now acknowledges that was not a true statement, and that she made that statement to protect her supplier.

MNPD officers had already obtained a state search warrant for Apt. H-97. They executed that warrant shortly after this takedown, and found Willis inside that apartment. She had about 10 grams of crushed tablets on her. A set of digital scales and an I-phone were recovered from H-97. Willis was Mirandized, and stated that she and Burns were selling pills to make extra money and that Wallace was her supplier.

MNPD officers then obtained a search warrant for Wallace's residence at 423 Revels Drive. They seized over 1100 tablets, scales, and about $4,300 cash in that search.

Cell phone review

Review of Burns' and Willis' phones show all three of them were working with each other to distribute hundreds of pills. Wallace's phone's content could not be directly extracted due to a

security feature on that phone, but her communications are preserved on Burns' and Willis' phones.

<u>Examples of evidence found in seized cell phones</u>

The CI used two phone numbers during the course of the investigation: 615-956-0577 and 931-820-4856. Willis' phone contents show contact with both numbers, including texts setting up the buys referenced above. For instance, on November 20, 2018, the CI texts Willis to say she lost her other phone. Willis responds to clarify whether the CI means $500 worth or 500 pills, indicating there was other contact to place that order. The CI responds that she wants 500 "of them." Willis tells the CI that she can get 150 pills a day until they total 500 pills, and that the pills will cost $3.50 each. On November 24, 2018, Willis texted to ask the CI if she wanted the 150 pills. On November 26, 2018 (i.e., Buy #2), the CI and Willis exchange texts showing that Willis would be ready soon, and that the CI was about to arrive. On December 4, 2018, Willis texted the CI that she "got all different kinds for ya better than the last time." The CI told Willis it would need to be the next day, and Willis complained that she was expecting to do the deal that day. On December 5, 2018 (i.e., Buy #3), the CI confirmed that she was on the way and about to pull up. On December 11, 2018, the CI and Willis texted to confirm that they would meet the next day (i.e., the December 12, 2018, take-down). There are also short phone conversations on that day.

Willis' phone also contains multiple photographs of similar tablets, and contains Wallace's phone number (731-609-5905), which is saved as "X Pills". That number is saved in Burns' phone as "Tiff." On November 11, 2018, Willis texts that number and asks for "50 of em." Wallace later texts that she is about to arrive. Similar requests for multiple pill deliveries occur repeatedly, with confirmation by Wallace that she is about to arrive.

Willis also texts "Don P" on November 16, 2018, that "DMan getting more pills." [DMan is Burns' nickname, and his number is saved in Willis' phone as "DMan."]

Willis and Burns also text each other regarding pills. For instance, after the CI orders 350 pills (i.e., Buy #3), Willis texts Burns to check if they have 200 pills, and that they need 150 more pills.

Burns then texts Wallace to get the additional 150 pills. Wallace confirmed that she has the pills, and they arrange to meet in Bellevue.

Burns also contacted Wallace to order the 350 pills for Buy #2, and the 1,000 pills for the take-down day. For instance, on December 11, 2018, Burns texts Wallace, "I need a 1000 in da morning if u can tiff." Wallace responds "K. My ppl pulln n tonight witem."

Burns also contacted Wallace to obtain more pills on other occasions for customers other than the CI. For instance, Burns texted Wallace "I need 100" on December 2, 2018.